UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **ALLSTATE FIRE AND CAS. INS. CO.,** )<br>*Plaintiff,* )<br>**v.** )<br> )<br>**JESSICA L. ROBERTS, ALONZO A. BOYD, TARA M. PETSCHEL, ROCHELLE DICKSON, and TAMIKA JEAN,** )<br>*Defendant.* ) | CASE NO.:_____ |

# COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Allstate Fire and Casualty Insurance Company ("Allstate"), by and through its attorneys, and for its Complaint for Declaratory Judgment states as follows:

### NATURE OF THE ACTION

1. Allstate seeks a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, as to its third-party coverage obligations under the insurance policy described more fully herein.

2. As set forth in further detail below, Allstate has no obligations under the subject policy because the insured, Jessica L. Roberts (the "Insured" or "Ms. Roberts") has failed to comply with policy provisions, which has prejudiced Allstate, and because the subject accident was staged or fraudulent, which likewise relieves Allstate of any potential obligations under the policy.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this Declaratory Judgment Action pursuant to 28 U.S.C. § 1332 because the controversy is between citizens of different states and the monetary value of the object of this action exceeds $75,000.

4. Plaintiff, Allstate, is an Illinois corporation with a principal place of business in Illinois.

5. Defendants are all individuals who are, upon information and belief, citizens of Rhode Island or Florida and none of them are citizens of the State of Illinois.

6. Defendants all have sufficient minimum contacts either by virtue of current or past residency with the district and, more specifically, the State of Rhode Island.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) and (c)(2), because Defendants are all subject to this Court's personal jurisdiction and the underlying actions that gave rise to the third-party claims occurred in this district.

8. There is an actual controversy about the rights and obligations of Allstate and its insured, and the claimants under the subject insurance policy, which entitles Allstate to a declaratory judgment pursuant to 28 U.S.C. § 2201.

9. This Court, sitting in diversity, applies Rhode Island substantive law to the Plaintiff's declaratory judgment claims. *See e.g.*, *Hartford Fire Ins. Co. v. Rhode Island Pub. Transit Auth.*, 215 F.3d 1311 (1st Cir. 2000) (noting, in affirming a favorable ruling for the insurer that in an insurance coverage declaratory judgment action, where "[j]urisdiction is premised on diversity of citizenship[,] . . . Rhode Island law controls").

## PARTIES

10. Allstate is a corporation with its principal place of business in the State of Illinois, which was at all times relevant hereto authorized to issue automobile insurance policies in the State of Rhode Island.

11. Defendant Jessica L. Roberts is, upon information and belief, a citizen of the State of Florida, residing in Jacksonville, Florida.

12. Ms. Roberts owned a green 2004 Volkswagen Passat, VIN number WVWVD63B94E213998, with a Rhode Island inspection sticker, expiring 12/2017, and Rhode Island registration 436B (the "Insured Vehicle").

13. Defendant Tamika Jean ("Ms. Jean") is, upon information and belief, a citizen of the State of Rhode Island, residing in the City of Cranston, Rhode Island.

14. Ms. Jean was, upon information and belief, the owner of a gray 2004 Audi A6, VIN number WAUCD64B34N060182, which had no Rhode Island inspection sticker and an expired Rhode Island registration CV284, which expired 06/2016 (the "Jean Vehicle")

15. Defendant Tara Petschel ("Ms. Petschel") is, upon information and belief, a citizen of the State of Rhode Island, residing in the City of Cranston, Rhode Island.

16. Defendant Alonzo Boyd ("Mr. Boyd") is upon information and belief, a citizen of the State of Rhode Island, residing in the City of Cranston, Rhode Island.

17. Mr. Boyd was the operator of a silver 2003 Mercedes-Benz SL convertible, VIN number WDBSK75F33F020302, with a Rhode Island inspection sticker, expiring 08/2017, and Rhode Island registration 622722 (the "Boyd Vehicle").

18. Although Ms. Petschel was the record owner of the Boyd Vehicle, upon information and belief, Mr. Boyd primarily used the Boyd Vehicle.

19. Defendant Rochelle Dickson ("Dickson") is upon information and belief, a citizen of the State of Rhode Island, residing in the City of Providence, Rhode Island.

20. Based on a number of claims made against its Insured, Allstate brings this action for declaratory judgment pursuant to § 9-30-1 to determine issues in controversy between the parties concerning their rights and obligations under an insurance policy described more fully below.

**FACTS**

21.  Ms. Roberts is the Named Insured on Allstate's auto insurance policy, policy number 925 060 292, with a policy period of September 28, 2016 to March 28, 2017 ("the Policy"), which was amended to identify the Insured Vehicle as a covered auto. A certified copy of the Policy is attached as **Exhibit A**.

22.  Although the Policy originally did *not* include collision or comprehensive insurance for the Insured Vehicle, Ms. Roberts added both collision and comprehensive insurance to the Policy on December 14, 2019.

23.  On or about December 19, 2016, at or about 11:30 p.m., Ms. Roberts was involved in a motor vehicle collision at or around 475 Doric Avenue, Cranston, Rhode Island (the "Collision"). A true and correct copy of the accident report, report number 16-80120-AC, prepared by Officer Brenton Medeiros ("the Report") is attached as **Exhibit B**.

24.  The Insured claimed that—on the night of the Collision—her friend, Ms. Dickson, called her and asked her to pick her up at 475 Doric Avenue Cranston, Rhode Island (the "Park") because the Jean Vehicle would not function.

25.  Ms. Roberts claimed that she was operating the Insured Vehicle when she pulled into the parking lot at the Park. The subject Property is identified below in Figure 1.

**Figure 1:**[1]



26. The Insured claimed that, at around 10:00 p.m., Ms. Dickson called her and asked her for a ride from the Park because the Jean Vehicle would not start.

27. Ms. Roberts further claimed that, as she pulled into the Park, the Insured Vehicle overheated, causing smoke, and, as a result, she lost control of the Insured Vehicle and struck the Jean Vehicle and the Boyd Vehicle at the Park.

28. The Insured claimed that, at the time of the Collision, Mr. Boyd was in the Boyd Vehicle and Ms. Dickson was in the Jean Vehicle.

29. Ms. Dickson claimed that, at the time of the Collision, Mr. Boyd was standing next to her car, the Jean Vehicle, speaking with her.

30. Mr. Boyd claimed that, he met Ms. Dickson at the Park around 11:00 p.m.

31. However, the Insured indicated that when Ms. Dickson called her around 10:00 p.m. she was already at the Park speaking with Mr. Boyd.

---

[1] Google Maps, 2020. *475 Doric Avenue*, 1:1.500. Google Maps, (accessed April 19, 2020) (July 2011 image) *available at* https://www.google.com/maps/@41.7714297,-71.4295149,3a,75y,164.8h,80.61t/data=!3m7!1e1!3m5!1sbxpvqbOB9Viw0c9DGINE8w!2e0!5s20110701T000000!7i13312!8i6656.

5

32. Mr. Boyd also claimed that, at the time of the Collision, he was in the Boyd Vehicle while Ms. Dickson was in the Jean Vehicle, speaking to each other with their windows down because it was cold.

33. Mr. Boyd claimed that he had no prior accidents or damage to the Boyd Vehicle.

34. Initially, the Insured indicated that someone came and picked her up at the Park that night.

35. The Insured then later claimed that she used Uber to return home.

36. In subsequent conversations with Allstate representatives, Officer Medeiros advised that something about the Collision did not feel right to him, and he asked all involved if this was a real accident.

37. The Report includes certain discrepancies regarding the make and model of the vehicles involved, but, of note, it refers to an Audi with a different VIN number than the Jean Vehicle.

38. While referring to the Boyd Vehicle as a Mercury instead of a Mercedes-Benz and the Insured Vehicle as a Volvo instead of a Volkswagen, those vehicles' VIN numbers were accurately reflected.

39. The Report notes that neither the Audi involved nor the Boyd Vehicle had insurance, as required under Rhode Island law.

40. The Report identifies the Policy as insuring the Insured Vehicle.

41. On or about December 20, 2016, Ms. Roberts reported the claim to Allstate.

42. Allstate promptly undertook to begin investigating the availability of coverage under the Policy.

43. Allstate's investigation uncovered several inconsistencies relating to the claimed Collision and facts that show the Collision was a staged accident which include the following:

(a) The Jean Vehicle had a different VIN number than the Audi noted in the Report, and the Jean Vehicle was in fact inoperable prior to the Collision, which was confirmed by a local mechanic who had been asked to create an estimate for the Jean Vehicle earlier in the month and an independent analysis of the Jean Vehicle by an Allstate investigator. The Jean Vehicle also showed evidence of prior preexisting damages. The Jean Vehicle was not registered and the plates on the car matched a blue 2000 Audi not the Jean Vehicle. Oxidation of the brakes of the Jean Vehicle showed that it had not been driven in months;

(b) Consistent with the Jean Vehicle being inoperable at the time of the Collision, there were impact points on the rear bumper of the Jean Vehicle and the front end of the Insured Vehicle, which show that the Insured Vehicle was used to push the Jean Vehicle to the scene of the Collision;

(c) All three (3) individuals at the scene of the Collision had different stories about how the Collision occurred and when the parties arrived;

(d) The Boyd Vehicle had been involved in prior accidents and it had preexisting damages—which included a malfunctioning hydraulic system, damages to the undercarriage consistent with the malfunctioning hydraulic system, and faulty workmanship relating to prior damages—that were not consistent with the claimed Collision, despite Mr. Boyd claiming the vehicle did not have any prior damages or accidents;

(e) The Insured added collision and comprehensive coverage five (5) days before the Collision and the Insured Vehicle to the Policy shortly before the Collision, claiming that she bought the Insured Vehicle with settlement funds from another accident with her prior car, but there was no evidence of such an accident; and

(f) The Insured Vehicle evidenced significant preexisting damage that was not consistent with the claimed Collision.

44. On January 31, 2017, Allstate wrote to the Insured and requested her cell phone records for December 2016 and her Uber account history, or the Uber account history for the

7

person whose account she used on the night of the Collision.  A copy of the January 31, 2017 letter is attached as **Exhibit** **C**.

45. The Insured never provided this information, which was relevant the Allstate's investigation of the claimed Collision.

46. Allstate received a demand from the attorney for Ms. Dickson and an arbitration hearing was scheduled.

47. Allstate appointed defense counsel for the Insured with regard to the arbitration, but the Insured failed to respond to attempts from defense counsel to contact her about the claim.

48. Ms. Robert's examination under oath ("EUO") was initially scheduled for March 8, 2017.

49. On that date, the Insured appeared, but, before the EUO began, she decided that she wanted to speak with her attorney before answering any questions and, as a result, the EUO did not go forward.

50. Allstate received a letter of representation for the Insured from Jack D. Pitts, Esq. of Pitts & Burns Attorneys at Law.

51. Subsequently, Allstate rescheduled the Insured's EUO for April 11, 2017.

52. Notice was provided to Ms. Roberts and her attorney.

53. However, when the Ms. Roberts' failed to confirm her availability for that date, or to otherwise respond to her attorney, the EUO was again postponed at the request of her counsel.

54. At that time, Ms. Roberts' attorney advised Allstate that he was not comfortable representing her further on this matter.

55. In an attempt to reschedule the EUO yet again, Allstate asked the Insured's attorney if he could accept service of the EUO notice on her behalf, but he indicated that the Insured had

ceased communications with him—after he left he a number of messages with no response from Ms. Roberts.

56. As a result of Ms. Roberts' failure to cooperate or otherwise communicate with anyone about her EUO, on May 22, 2017, Allstate issued a reservation of rights letter to Ms. Roberts, which was also sent to her counsel who had not formally withdrawn from his representation. A copy of Allstate's reservation of rights letter is attached as **Exhibit D**.

57. In the reservation of rights letter, Allstate provides that, "[w]e are reserving our right to later deny coverage obligation and assert a defense of no coverage under the policy because you have failed to cooperate with the investigation of this claim," and noted pertinent Policy language providing that "an insured person must cooperate with us in the investigation, settlement and defense of any claim or lawsuit," and that Allstate "may also require that person to submit to examinations under oath." **Ex. D**, at 1.

58. Allstate received no response to the May 22, 2017 reservation of rights letter.

59. Ms. Roberts EUO was then scheduled again, for a third time, to take place on June 13, 2017.

60. On June 13, 2017, Ms. Roberts did not appear for her EUO or otherwise provide Allstate with any communication relating to the EUO.

61. As a result of the Insured's failure to comply with Allstate's investigation and with defense counsel retained for handling the arbitration of Dickson/Jean claim, and because it appeared that the Collision was in fact a staged accident, on June 16, 2017, Allstate issued a denial letter to Ms. Roberts, which was also sent to her counsel who has not formally withdrawn from his representation. A copy of Allstate's denial letter is attached as **Exhibit E**.

62. In the denial letter, Allstate notes explains the basis for its denial as follows:

> You have failed to cooperate with the investigation of this claim. We scheduled your examination under oath on 3 occasions. On March 8, 2017 you did appear and determined that you wanted to speak with your attorney. Your examination under oath was re-noticed for April 11, 2017 at which time it was cancelled by Mr. Pitts on your behalf. We then re-noticed for June 13, 2017 and you did not appear. Our investigation further revealed that the loss did not occur as reported there is evidence this was a staged accident and the Audi and Mercedes were parked and unoccupied at the time of the loss. Our evidence further states that the Audi was not drivable and was pushed by the Volkswagen into the parking lot.

**Ex. E**, at 1.

63. Allstate received no response to the June 16, 2017 denial letter.

## THE POLICY

64. The Policy, "Allstate Fire and Casualty Insurance Company Auto Policy," provides various coverages to the Insured and, in some cases, third-party claimants, pursuant to the terms, conditions, and exclusions set forth therein.

65. The Policy provides that, generally, it "shall be governed by the laws of Rhode Island."

66. It goes on to provide:

> **Exclusions – What is not covered**
> **We** will not pay for those damages which an insured person is legally obligated to pay because of:
>
> . . .
>
> 8. **bodily injury** or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

67. The Policy expressly conditions coverage on the following:

> **Assistance And Cooperation**
> When **we** ask, an insured person must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit. If **we**

10

ask, that person must also help **us** obtain payment from anyone who may be joint responsible.

68. The Policy also provides the following:

   **What You Must Do If There Is A Loss**
   1. As soon as possible any person making claim must give **us** written proof of loss. It must include all details reasonably required by **us**. **We** have [ ] the right to inspect the damaged property. **We** may require any person making claim to file with **us** a sworn proof of loss. **We** may also require that person to submit examinations under oath.

69. As set forth herein, the foregoing Policy language operates to preclude coverage for the claims made in the Lawsuits or any coverage sought by Ms. Roberts.

## THE LAWSUITS

70. There are two primary lawsuits pending against Ms. Roberts as a result of the Collision, naming the Insured as the sole defendant.

**The *Petschel/Boyd Action***

71. On January 11, 2019, Ms. Petschel and Mr. Boyd filed two separate, but otherwise identical, lawsuits against "Jessica Phillips" in the Rhode Island Superior Court, in and for Providence County: 1) PC-2019-0295; and 2) PC-2019-0296, both captioned *Boyd, et al., v. Phillips*.[2]

72. Upon information and belief, "Jessica Phillips" is Ms. Roberts—Allstate's named insured on the Policy.[3]

73. Plaintiffs, Ms. Petschel and Mr. Boyd only filed a return of service in case number PC-2019-0296 (the "*Petschel/Boyd Action*").

---

[2] Allstate notes that, to the extent these suits seek damages as the result of personal injury, they appear to be time barred by Gen. Laws 1956 § 9-1-14(b).
[3] Allstate merely makes this allegation upon information and belief and fully reserves its rights with regard to whether "Jessica Phillips" could qualify as an insured under the Policy. Indeed, it is unclear if "Jessica Phillips" is an alias of Ms. Roberts or whether there is some other explanation for the names.

74. In the *Petschel/Boyd Action*, the complaint includes allegations that:

   (a) In paragraph 4, on "December 19, 2016, . . . Boyd, was the operator of motor vehicle owned by . . . Petschel, which was parked in parking lot located at 475 Doric Avenue in Cranston, Rhode Island."

   (b) On that date, a "vehicle owned and operated by Defendant, Jessica L. Phillips entered the same parking lot . . ., and Defendant was operating her vehicle in such negligent manner causing it to collide with the front left side of the vehicle." Compl., at ¶ 5.

   (c) As a result of the foregoing collision, Ms. Petschel and Mr. Boyd seek damages in an unnamed amount for claimed bodily injury and property damage. *Id.* ¶¶ 6–7.

75. Allstate has provided defense counsel for Ms. Roberts in the *Petschel/Boyd Action*, subject to its denial letter dated June 16, 2017. *See* **Ex. E**.

76. The *Petschel/Boyd Action* remains pending and is in the initial discovery phases of that action.

77. In the *Petschel/Boyd Action*, the plaintiffs' filed two motions to compel—one for answers to interrogatories and one for requests for production—that were granted by the Court, by order entered on January 2, 2020.

78. In pertinent part, Ms. Roberts has not cooperated with defense counsel retained by Allstate, which resulted in the aforementioned motions to compel being granted.

79. Ms. Roberts has not cooperated or assisted Allstate in the defense of the *Petschel/Boyd Action*.

**The *Dickson/Jean Action***

80. On November 5, 2019, Ms. Dickson and Ms. Jean filed an action in in the Rhode Island Superior Court, case number PC-2019-10722, captioned *Dickson, et al., v. Phillips*, naming "Jessica L. Phillips" as the sole defendant (the "*Dickson/Jean Action*") (collectively, with the *Petschel/Boyd Action*, the "Lawsuits").

81. Upon information and belief, "Jessica L. Phillips" is Ms. Roberts—Allstate's named insured on the Policy.[4]

82. In the *Dickson/Jean Action*, the complaint includes allegations that:

    (a) In paragraph 3, on "December 19, 2016, . . . Dickson, at all times . . . was operating Plaintiff, Tamika Jean's vehicle at or about Doric Avenue, Cranston, Rhode Island."

    (b) On that same date, "Jessica L. Phillips, Alias negligently operated her vehicle into collision with Plaintiff's vehicle," allegedly causing bodily injury and property damage as a result of same.

83. The *Dickson/Jean Action* remains pending and no action has been taken in that case since an Affidavit of Compliance, with regard to service, was filed on December 30, 2019.

84. Prior to initiating suit, Ms. Dickson and Ms. Jean made a claim against Ms. Roberts, for which Allstate provided representation through the non-binding arbitration process, subject to its denial letter dated June 16, 2017.  *See* **Ex. E**.

85. The Insured did not cooperate with defense counsel appointed by Allstate during the aforementioned arbitration process.

86. As set forth herein, Allstate has no duty to defend or indemnify Ms. Roberts based on either her failure to cooperate with Allstate—including her failure to appear for her EUO—or because the underlying Collision was staged and, therefore, reasonably expected or intended from Ms. Roberts' point of view.

87. Allstate has an interest, legal or equitable, as to its rights and obligations under the Policy, as Allstate continues to incur expense to defend Ms. Roberts in the Lawsuits and faces

---

[4] Again, as with the *Petschel/Boyd Action*, Allstate merely makes this allegation upon information and belief and fully reserves its rights with regard to whether "Jessica L. Phillips" could qualify as an insured under the Policy.  Indeed, it is unclear if "Jessica L. Phillips" is an alias of Ms. Roberts or whether there is some other explanation for the names.

potential demands for settlement, without knowing its obligations under the Policy to defend and/or indemnify the Insured.

88. There is an actual bona fide and substantial question or issue in dispute, or substantial uncertainty of legal obligations, which requires a decision by this Court to determine the rights and obligations between the parties to this Declaratory Judgment action as to Allstate's obligations under the Policy in connection with the Lawsuits.

89. All persons having an interest in the subject matter of this Declaratory Judgment action are made parties to this Action and/or have been given reasonable notice of this Action.

### COUNT ONE – DECLARATORY JUDGMENT – FAILURE TO COOPERATE

90. Paragraphs 1 through 89, above, are incorporated as paragraphs 1–89 of the Complaint, as if fully set forth herein.

91. The Policy expressly provides that the Insured must "cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit" and Allstate may "require that person to submit examinations under oath."

92. The Rhode Island Supreme Court has consistently recognized that a cooperation provision is "not a covenant but a condition which if not complied with gives the insurer the right to terminate the policy." *Marley v. Bankers' Indemnity Insurance Co.*, 53 R.I. 289, 292, 166 A. 350, 351 (1933).

93. The Supreme Court has further observed that "[i]t is quite apparent that if the insurer is to prepare an adequate defense in cases of contested liability or make a just settlement, it must have from the insured a complete and truthful statement of the facts made in a spirit of co-operation and helpfulness by the insured, who is in many cases at least, the only source of

information available to the insurer." *Ciaccio v. Norfolk & Dedham Mut. Fire Ins. Co.*, 90 R.I. 379, 383, 158 A.2d 277, 279–80 (1960).

94. Here, the Insured has, time-and-again, failed to comply or otherwise cooperate with Allstate or defense counsel retained by Allstate, which is evidenced by, but not necessarily limited to, the following:

    (a)    the Insured's failure to comply with Allstate's January 31, 2017 request for information relating to certain Uber and telephone account histories from December 2016;

    (b)    the Insured's repeated failure to appear for an EUO;

    (c)    the Insured's failure to cooperate with defense counsel appointed by Allstate or otherwise participate in the defense of the pre-suit arbitration of the *Dickson/Jean Action*; and

    (d)    the Insured's failure to cooperate with defense counsel appointed by Allstate or otherwise participate in the defense of the *Petschel/Boyd Action*.

95. The Insured has prejudiced Allstate by the Insured's failure to cooperate with Allstate and defense counsel, including an inability to complete its investigation of the Collision which included *indicia* of fraud, and an inability to maintain a complete defense of the Lawsuits. *See, e.g.*, *id.*

96. As a result of the Insured's repeated failure to cooperate, Allstate is entitled to a declaratory judgment that is owes no obligations under the subject Policy for the claims made in the Lawsuits or by the Insured.

97. Rhode Island courts have granted declaratory relief under similar circumstances. *See, e.g.*, *Surabian v. Allstate Ins. Co.*, No. C.A. NO. 73-2564, 1977 WL 186340, at *3 (R.I. Super. Mar. 2, 1977) (Lagueux, J.) (holding that Allstate had no duty to defend—and axiomatically no duty to indemnify—based on the insured's "fail[ure] to cooperate with the insurer in the defense of the civil suit").

98. Based on the foregoing, Allstate is entitled to a declaration that it has no duty to defend or indemnify the Insured, or any third-party, for any losses claimed as a result of, or arising out of, the Collision based on the Insured's repeated and complete noncooperation.

### COUNT TWO – DECLARATORY JUDGMENT – INTENTIONAL CONDUCT EXLCUSION

99. Paragraphs 1 through 98, above, are incorporated as paragraphs 1–98 of Count Two, as if fully set forth herein.

100. The Policy expressly excludes any coverage for any "**bodily injury** or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person."

101. The evidence will establish that the Collision was not an accident, but, rather an intentionally staged crash in an attempt to create coverage—and thereby a windfall—to the parties for various damages that would otherwise not be covered by the Policy.

102. Because a staged accident is an "intentional" and "criminal" act, the Policy exclusion operates to exclude coverage for the Collision.

103. Courts have consistently held that there can be no coverage for a loss that is the result of a staged accident. *See, e.g.*, *Glob. Liberty Ins. Co. of New York v. Eveillard*, 171 A.D.3d 749, 751, 96 N.Y.S.3d 646, 648 (N.Y. App. Div. 2019) ("'an intentional and staged collision caused in the furtherance of an insurance fraud scheme is not a covered accident under a policy of insurance'" (quoting *Progressive Advanced Ins. Co. v. McAdam*, 139 A.D.3d 691, 692, 32 N.Y.S.3d 191, 192 (N.Y. App. Div. 2016))). *See also Allstate Ins. Co. v. Lopez*, 325 N.J. Super. 268, 738 A.2d 987 (N.J. Super. Ct. 1999) (holding that an auto policy was void *ab initio* as to the purported insured and to victims who made misrepresentations and participated in the conspiracy

to create a staged accident and the policy provided no coverage to victims for injuries caused by staged accidents).

104. Here, because the Collision was a staged accident, Allstate has no responsibility to provide coverage for any claims arising out of the Collision, including the Lawsuits.

105. As a result, Allstate is entitled to a declaratory judgment stating that it has no duty to defend and, likewise, no duty to indemnify, because the Collision was a staged accident, which was intentional and/or criminal and relieved Allstate of any obligations under the Policy.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A. Enter judgment against the Defendants and order that Plaintiff has no obligations under the subject Policy with regard to the Collision, including the duty to defend and the duty to indemnify; and

B. Grant such further relief as may be equitable and just.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38(b)(1), Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

**ALLSTATE FIRE AND CAS. INS. CO.,**

By its attorneys,

*/s/  Daniel F. Sullivan*
Daniel F. Sullivan (#8169)
Wm Maxwell Daley (#9477)
**ROBINSON & COLE LLP**
One Financial Plaza, 14th Floor
Providence, RI 02903
Tel: (401) 709-3300
Fax: (401) 709-3399
dsullivan@rc.com
wdaley@rc.com

Dated:  June 26, 2020